# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| **HERBERT H. LANDY INSURANCE** | ) | |
| **AGENCY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil No.** |
| | ) | **14-12552-FDS** |
| **v.** | ) | |
| | ) | |
| **NAVIGATORS MANAGEMENT** | ) | |
| **COMPANY, INC.; NAVIGATORS** | ) | |
| **INSURANCE COMPANY, a subsidiary of** | ) | |
| **THE NAVIGATORS GROUP, INC.;** | ) | |
| **McGOWAN & COMPANY, INC., d/b/a** | ) | |
| **McGOWAN PROGRAM** | ) | |
| **ADMINISTRATORS; and NAVIGATORS** | ) | |
| **SPECIALTY INSURANCE COMPANY, a** | ) | |
| **subsidiary of THE NAVIGATORS GROUP,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| _____ | ) | |

## MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION
## TO REMAND AND DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, J.**

This action arises out of an alleged breach of contract.  Plaintiff Herbert H. Landy Insurance Agency, Inc., has brought suit against defendants McGowan & Company, Inc., d/b/a/ McGowan Program Administrators, Navigators Management Company, Inc., and two of Navigator's affiliated insurance companies.[1]  The complaint alleges that defendants breached an agreement between Landy and Navigators by using Landy's proprietary information without permission.

---

[1] The parties treat the three Navigators companies as one entity for the purposes of their motions.

Plaintiff originally filed this action, as well as a motion for a preliminary injunction, in Norfolk Superior Court.  Defendants then removed the action to this Court.  Plaintiff has filed a motion to remand, contending that the Court lacks diversity jurisdiction over this case because the amount in controversy does not exceed $75,000.  Defendant McGowan has moved to dismiss under Rule 12(b)(3) for improper venue or, in the alternative, to transfer the case pursuant to a venue-selection clause in the agreement.  Defendant Navigators has moved to transfer the case and to dismiss the complaint under Rule 12(b)(6) for failure to state a claim.

For the following reasons, the motion to remand and the motion to dismiss for improper venue will be denied.  The motions to transfer will be granted.  Plaintiff's motion for a preliminary injunction and defendant Navigators' motion to dismiss under Rule 12(b)(6) will remain pending.

I.     **Background**

   A.     **Factual Background**

The following facts are set for as alleged in the complaint unless otherwise noted.

      1.     **Alleged Breach of Contract**

Landy is Massachusetts corporation with a principal place of business in Needham, Massachusetts.  Navigators Management Company is a New York corporation with a principal place of business in Connecticut.  Navigators Insurance Company has a principal place of business in New York and is a subsidiary of the Navigators Group, an international specialty insurance holding company.  Navigators Specialty Insurance Company is also a subsidiary of the Navigators Group with a principal place of business in New York, New York.[2]  McGowan &

---

[2] The complaint does not identify the states of incorporation of either subsidiary, although it does not appear that either is incorporated in Massachusetts.

Company is an Ohio corporation with a principal place of business in Ohio, and is doing business as McGowan Program Administrators.

Landy is an insurance agency that provides errors-and-omissions liability insurance.  In 2011, Landy and Navigators entered into a contract called the Program Administrator Agreement.  The agreement required Landy to place all new and existing business for real estate professionals with Navigators or give Navigators the right of first refusal on that business.  "The book of E&O insurance business for real estate professionals which Landy placed with Navigators in 2011 was valued at approximately twenty million . . . dollars."  (Compl. ¶ 21).

The agreement contained a termination clause requiring 180 days' written notice for termination with or without cause.  In the event of termination, "[r]ecords of insureds, policyholders, and their use and control for solicitation of business written or bound by or through [Landy] shall, as between [Landy] and [Navigators], [would] be the exclusive property of [Landy]."  (Agreement § 8.1).  In addition, the agreement stated that Navigators "shall not use its records of expirations in any marketing method for the sale, service, or renewal of any form of insurance coverage or other product . . . ."  (Agreement § 8.3).

On October 1, 2013, Landy gave notice of termination of the agreement, making the termination effective April 1, 2014.  After termination of the agreement, Navigators entered into an agreement with McGowan.  On June 3, 2014, McGowan sent an e-mail to some number of undisclosed recipients informing them that it was time to renew their E&O policies with Navigators.  The e-mail states that "McGowan Program Managers (MPA) has been selected by Navigators to be the exclusive National Program Manager for its Real Estate Agent & Appraisers E&O Program. Your Navigators policy *cannot* be renewed through the former

program administrator."  (Notice of Removal, Ex. 4 (emphasis in original)).

Landy contacted Navigators to request a retraction of the e-mail and informed Navigators
that the e-mail violated the Program Administrator Agreement.  Navigators allegedly told
McGowan that the e-mail was inappropriate, but has refused to order a retraction.  It contends
that it has not breached the agreement because it was McGowan, not Navigators, that sent the
solicitation to Landy's customers.

### 2.      The Program Administration Agreement

The Program Administration Agreement between Landy and Navigators was effective as
of February 22, 2011.  McGowan did not sign the agreement.  The agreement provides that
Navigators will pay Landy a commission of 21 percent on E&O policies sold to real estate
appraisers and 24 percent on E&O policies sold to real estate agents.

Section 14.6 of the agreement contains a forum-selection clause, which states as follows:

> [a]ny dispute arising out of, under, or in connection with, the terms, conditions or
> enforcement of any of the provisions of this agreement shall be submitted and
> litigated in New York, New York and the program administrator hereby submits
> to the exclusive jurisdiction of the United States District Court for the Southern
> District of New York for the purposes of the enforcement of the provisions of this
> agreement.

(Agreement § 14.6).  Section 14.6 survives the termination of the agreement.  (*Id.*).

### B.      Procedural Background

On June 11, 2014, Landy filed the complaint in this case in Norfolk Superior Court.  The
complaint alleges claims for breach of contract; interference with advantageous business
relationships; misappropriation of trade secrets in violation of Mass. Gen. Laws ch. 94, §§ 42
and 42A; breach of the implied covenant of good faith and fair dealing; conversion; unfair and
deceptive practices in violation of Mass. Gen. Laws ch. 93A; and unjust enrichment.  It requests

double damages under Chapter 93 and treble damages under Chapter 93A.  The complaint also requests a preliminary injunction and an accounting for all accounts that McGowan solicited in its June 3, 2014 e-mail.  The civil cover sheet to the complaint states that the alleged damages were "[i]n excess of $25,000."  (Notice of Removal, Ex. 2).

On June 17, 2014, Landy filed a motion for a preliminary injunction.  That same day, defendants removed the case to this Court on the basis of diversity jurisdiction.  On June 23, 2014, Landy filed a motion to remand the case to state court, contending that the amount-in-controversy requirement for diversity jurisdiction has not been met.

On July 7, 2014, defendant McGowan filed a motion to dismiss for improper venue or, in the alternative, to transfer.  That same day, defendant Navigators also filed a motion to transfer.  On July 8, defendant Navigators filed a motion to dismiss the complaint for failure to state a claim under Rule 12(b)(6).

**II.     Analysis**

    **A.      Remand**

Because courts "have a duty to ensure that federal district courts are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress," the Court considers plaintiff's motion to remand first.  *CE Design Ltd. v. American Economy Ins. Co.*, 2014 WL 2781818, at *2 (1st Cir. Jun. 19, 2014) (quoting *Esquilin-Mendoza v. Don King Prods., Inc.*, 638 F.3d 1, 3 (1st Cir. 2011) (internal alteration omitted)).

By statute, federal district courts have original jurisdiction over civil actions between citizens of different states when the amount in controversy exceeds $75,000.  28 U.S.C. § 1332. A party can remove an action to federal court only when the district court could have exercised

original jurisdiction. *Fayard v. Northeast Vehicle Services, LLC*, 533 F.3d 42, 48 (1st Cir. 2008). The party seeking to invoke federal jurisdiction bears the burden of establishing subject-matter jurisdiction. *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 48 (1st Cir. 2009).

Defendants thus "bear the burden of showing that removal was proper." *Fayard*, 553 F.3d at 45. It is undisputed that there is complete diversity in this case. Plaintiff contends, however, that the amount-in-controversy requirement cannot be met.

The First Circuit has yet to decide how heavy of a burden the removing party has when showing the amount-in-controversy requirement. *Milford-Bennington R. Co. Inc. v. Pan Am Railways, Inc.*, 695 F.3d 175, 178-79 (1st Cir. 2012). Nevertheless, it is well-established that a defendant must show that there is a "reasonable probability" that the amount in controversy will exceed the jurisdictional threshold when removing a case to federal court under the Class Action Fairness Act of 2005. *Amoche*, 556 F.3d at 48-49. There is no obvious reason that the burden of showing that the jurisdictional amount has been met should be different in the context of diversity jurisdiction. *See Youtsey v. Avibank Mfg., Inc.*, 734 F. Supp. 2d 230, 236 (D. Mass. 2010) ("In this court's view, every reason the First Circuit used in *Amoche* in arriving at the 'reasonable probability' standard in the context of CAFA applies equally as well" in the context of diversity jurisdiction). Consequently, the Court will apply the "reasonable probability" standard when determining whether defendants have met their burden regarding the amount in controversy in this case.

The following appears to be the proper framework for deciding whether the amount in controversy is met under the "reasonable probability" standard:

> First, if the jurisdictional amount is not facially apparent from the complaint, then a court need look to the notice of removal and any other materials submitted by

6

the removing defendant.  However, whether a defendant has shown a reasonable probability that the amount in controversy exceeds the jurisdictional minimum may well require analysis of what both parties have shown.  Second, as part of the analysis of whether a removing defendant has met the standard of "reasonable probability," a court may consider which party has better access to the relevant information.  Third, a court's analysis of the amount in controversy focuses on whether a removing defendant has shown a reasonable probability that more than the jurisdictional minimum is in controversy at the time of removal.  Fourth, any doubts in the evidence should be construed in favor of remand because the court has a responsibility to police the border of federal jurisdiction.  Fifth, this preliminary determination concerning whether a defendant has met its burden should be done quickly, without an extensive fact-finding inquiry.  Finally, a plaintiff's likelihood of success on the merits is largely irrelevant to the court's jurisdiction because the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover.

*Reynolds v. World Courier Ground, Inc.*, 272 F.R.D. 284, 286 (D. Mass. 2011) (internal quotations and footnotes omitted).

To determine the amount in controversy, the Court first looks to whether plaintiff made specific damage allegations in the complaint.  *See Coventry Sewage Associates v. Dworkin Realty Co.*, 71 F.3d 1, 6 (1st Cir. 1995).  A court will determine the amount in controversy from the face of the complaint "'unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith.'"  *Coventry Sewage*, 71 F.3d at 4 (quoting *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961)).  "'[W]hen a plaintiff makes a claim under a statute including a damage multiplier, a court must apply that factor in evaluating the amount in controversy.'"  *Lucas v. Ultima Framingham LLC*, 2013 WL 5405668, at *3 (D. Mass. Sep. 27, 2013) (quoting *Evans v. Yum Brands, Inc.*, 326 F. Supp. 2d 214, 222 (D.N.H. 2004)).

Defendants contend that the allegations in the complaint show that the $75,000 amount-in-controversy requirement has been met.  They contend that because plaintiff placed a book of business worth $20 million with Navigators, its commissions in connection with that volume of

business easily exceed the jurisdictional limit.

The complaint alleges that plaintiff placed a $20 million book of business with Navigators.  It also alleges that Navigators would have to pay plaintiff a commission of at least 21 percent on the sale of any policy to a customer in the book of business.  The value of plaintiff's commissions on the book of business, therefore, is at least $4.2 million.

Plaintiff contends, however, that the amount in controversy is determined at the time of removal.  *See Amoche*, 556 F.3d at 51.  It points out that the case was removed only two weeks after the e-mail that allegedly breached the agreement was sent.  Plaintiff contends that it is unlikely that enough of defendants' customers renewed their E&O insurance policies in those two weeks to make the amount in controversy exceed $75,000.

It is true that at this juncture of the litigation, it is unclear how much defendants' alleged breach of contract harmed plaintiff.  However, "[i]n actions seeking declaratory or injunctive relief, the amount in controversy is measured by the pecuniary value of the rights being litigated."  *Giangrande v. Shearson Lehman/E.F. Hutton*, 803 F. Supp. 464, 467-68 (D. Mass. 1992) (citing *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)); *see also Richard C. Young & Co., Ltd. v. Leventhal*, 389 F.3d 1, 3 (1st Cir. 2004) (amount in controversy "is measured not by the monetary judgment which the plaintiff may recover but by the judgment's pecuniary consequences to those involved in the litigation").  Here, plaintiff is seeking to vindicate its ownership of the proprietary information in a book of business worth $20 million and seeks an injunction to prevent defendants from using that proprietary information.  Even assuming plaintiff only has a 21 percent interest in that proprietary information (the lowest commission it would receive under the agreement), the value of the right it is seeking to enforce

8

greatly exceeds the $75,000 amount-in-controversy requirement.  *See Drulias v. Ade Corp.*, 2006 WL 1766502, at *2 (D. Mass. Jun. 26, 2006) (finding "that the matter in controversy hurdle has been surmounted because of the enormous value of the merger [p]laintiffs seek to enjoin"); *see also JTH Tax, Inc. v. Frashier*, 624 F.3d 635, 639 (4th Cir. 2010) (value of injunction seeking to enjoin defendant from alleged improper use of a franchise under a franchise agreement satisfied amount-in-controversy requirement).

The complaint also seeks damages from any commissions received from accounts solicited through McGowan's e-mail, double or treble damages, and attorneys' fees.  Even assuming that only a third of the customers in the book of business renew their policies any given year and that renewals are evenly distributed throughout the year, plaintiff's damages over the two-week period between the e-mail and the removal of this case were $58,333.33.  Double damages from the complaint's Chapter 93 claim mean the amount of plaintiff's damages exceeds $75,000.

There is a reasonable probability that the amount in controversy in this case exceeds $75,000.  Accordingly, the motion to remand will be denied.

**B.    Improper Venue**

Defendant McGowan has moved for dismissal under Rule 12(b)(3) for improper venue. The Supreme Court has expressly rejected the argument that a forum-selection clause can be enforced by a motion to dismiss under Rule 12(b)(3).  *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*, 134 S.Ct. 568, 575 (2013) ("Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories listed in § 1391(b).").  Accordingly, the motion to dismiss for improper venue will

be denied.

      **C.**    <u>**Transfer**</u>

      Defendants have moved to transfer the case to the Southern District of New York pursuant to the agreement between plaintiff and defendant Navigators.  When a plaintiff has contractually agreed to a specific venue by means of a forum-selection clause, a court may enforce this agreement by granting a motion to transfer under 28 U.S.C. § 1404(a).  *Atlantic Marine*, 134 S.Ct. at 575.  "It is well established that forum selection clauses 'are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.'"  *Rivera v. Ventro Medico de Turabo, Inc.*, 575 F.3d 10, 18 (1st Cir. 2009) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (internal alteration omitted)).

      The agreement that defendant Navigators allegedly breached contains a forum-selection clause stating "[a]ny dispute arising out of, under, or in connection with, the terms, conditions or enforcement of any of the provisions of this agreement shall be submitted and litigated in New York, New York."  (Agreement § 14.6).  Plaintiff's claims arise out of the agreement and the agreement explicitly states that the forum-selection clause survives termination of the agreement.  Plaintiff does not contend that the enforcement of the clause would be unreasonable.

      Plaintiff does, however, contend that defendant McGowan cannot enforce the forum-selection clause because it is not privy to the contract.  It further contends that if defendant Navigators' motion to dismiss under Rule 12(b)(6) were granted, there would be no basis for the enforcement of the forum-selection clause.

      It is well-established that courts should not "reward attempts to evade enforcement of

forum selection agreements" through "artful pleading." *Lambert v. Kysar*, 983 F.3d 1110, 1121 (1st Cir. 1993).  Naming McGowan as a defendant appears to be the kind of artful pleading the First Circuit referred to in *Lambert*.  *See id.* (enforcing forum-selection clause where plaintiff alleged both breach of contract and tort claims not covered by the clause).  It would be unfair to allow plaintiff to avoid a forum-selection clause by creatively adding a defendant who is not a party to the contract.  Furthermore, plaintiff has not contended that transfer would prejudice it. *See Somerville Auto Transport Service, Inc. v. Automotive Fin. Corp.*, 691 F. Supp. 2d 267, 272 (D. Mass. 2010) (holding that plaintiff could not avoid enforcement of an applicable forum selection clause by including tort allegations in the complaint against individuals not privy to the contract related to those claims).  Moreover, because defendant McGowan has moved to transfer the case, it appears that transfer would not prejudice it.

Accordingly, the motions to transfer will be granted.

**III.   Conclusion**

For the foregoing reasons:

1.      Plaintiff's motion to remand (Docket No. 5) is DENIED;

2.      Defendant McGowan's motion to dismiss, or in the alternative, to transfer (Docket No. 8) is GRANTED as to transfer and DENIED in all other respects;

3.      Defendant Navigators' motion to transfer (Docket No. 12) is GRANTED;

4.      Plaintiff's motion for preliminary injunction (Docket No. 22) and defendant Navigators' motion to dismiss (Docket No. 16) shall remain pending;

5.      This case is TRANSFERRED to the United States District Court for the Southern District of New York.

**So Ordered.**

/s/ F. Dennis Saylor

F. Dennis Saylor IV

Dated: August 8, 2014                    United States District Judge

12